**No. 23-7025**

_____

**UNITED STATES COURT OF APPEALS FOR THE
DISTRICT OF COLUMBIA CIRCUIT**

_____

IN RE SUBPOENAS SERVED ON AMERICAN ACADEMY OF PEDIATRICS,
et al.,

_____

On Appeal from the United States District Court
for the District of Columbia, No. 1:23-mc-00004-CJN
Before the Honorable Carl J. Nichols

_____

**APPELLANTS' EMERGENCY MOTION
FOR A STAY PENDING APPEAL**

_____

Cortlin H. Lannin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-6000
clannin@cov.com

Michael J. Lanosa
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (424) 332-4800
mlanosa@cov.com

D. Jean Veta
Mishi Jain
Emile Katz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
jveta@cov.com
mjain@cov.com
ekatz@cov.com

*Counsel for Appellants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .......................................................................................... 1

BACKGROUND ............................................................................................ 5

ARGUMENT ................................................................................................ 9

I.      Appellants Are Likely to Succeed on the Merits of Their Appeal
        Because Their First Amendment Interests in Protecting Internal
        Deliberations Outweigh Any Need the State Might Have for the
        Requested Information. ...................................................................... 9

        A.      This Court Has Jurisdiction to Entertain Appellants' Appeal. .......... 10

        B.      Appellants Are Likely to Succeed on the Merits of Their
                Appeal............................................................................. 12

II.     Appellants Will Be Irreparably Injured Absent a Stay Because the
        Imminent Harm to Their First Amendment Rights Cannot Be
        Remedied. ......................................................................................... 18

III.    The Public Interest in Protecting First Amendment Values and
        Encouraging Robust Scientific Debate Favors a Stay............................ 20

IV.     Any Claimed Harm to the State From a Stay Is Speculative at Best. .......... 21

CONCLUSION .............................................................................................. 23

CERTIFICATE OF COMPLIANCE .................................................................... 24

CERTIFICATE OF SERVICE ........................................................................... 25

ADDENDUM:

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ........ A-1

RULE 26.1. DISCLOSURE STATEMENT....................................................... A-3

i

## TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. FEC*,
  333 F.3d 168 (D.C. Cir. 2003)................................................................4, 14

*Apple Inc. v. Match Grp., Inc.*,
  2021 WL 3727067 (N.D. Cal. Aug. 19, 2021) ....................................................15

*Black Panther Party v. Smith*,
  661 F.2d 1243 (D.C. Cir. 1981)................................................12, 15, 16, 17

*Buckley v. Valeo*,
  424 U.S. 1 (1976)..............................................................................................14

*Cate v. Oldham*,
  707 F.2d 1176 (11th Cir. 1983) ......................................................................20

*Chaplaincy of Full Gospel Churches v. England*,
  454 F.3d 290 (D.C. Cir. 2006)..........................................................................19

*Cuomo v. U.S. Nuclear Regul. Comm'n*,
  772 F.2d 972 (D.C. Cir. 1985)............................................................................9

*Elrod v. Burns*,
  427 U.S. 347 (1976).........................................................................................18

*In re Fosamax Prods. Liab. Litig.*,
  2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009)....................................................21

*Friends of Cap. Crescent Trail v. Fed. Transit Admin.*,
  263 F. Supp. 3d 144, 147 (D.D.C. 2017)............................................................9

*Int'l Action Ctr. v. United States*,
  207 F.R.D. 1 (D.D.C. 2002) ............................................................................13

*Leopold v. Cent. Intel. Agency*,
  987 F.3d 163 (D.C. Cir. 2021).........................................................................12

*Mills v. District of Columbia*,
  571 F.3d 1304 (D.C. Cir. 2009).......................................................................18

ii

*Mohawk Indus., Inc. v. Carpenter*,
  558 U.S. 100 (2009)................................................................10, 11

*Perry v. Schwarzenegger*,
  591 F.3d 1147 (9th Cir. 2010) ...........................................14, 15, 16

*Plough Inc. v. Nat'l Acad. of Scis.*,
  530 A.2d 1152 (D.C. 1987) ..........................................................21

*Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*,
  547 U.S. 47 (2006)........................................................................4

*Simms v. District of Columbia*,
  872 F. Supp. 2d 90 (D.D.C. 2012)..................................................20

*Singh v. Berger*,
  56 F.4th 88 (D.C. Cir. 2022)........................................................18

*St. Marks Place Housing Co. v. HUD*,
  610 F.3d 75 (D.C. Cir. 2010)........................................................10

*Sweezy v. New Hampshire*,
  354 U.S. 234 (1957)....................................................................21

*Whole Woman's Health v. Smith*,
  896 F.3d 362 (5th Cir. 2018) ...........................................11, 12, 14

*Wis. Gas Co. v. FERC*,
  758 F.2d 669 (D.C. Cir. 1985)................................................18, 21

## Statutes & Rules

28 U.S.C. § 1291 ......................................................................10, 12

28 U.S.C. § 1292 ..........................................................................12

D.C. Cir. Rule 27(f) ........................................................................4

## Other Authorities

American College of Pediatricians, Position Statements,
  https://acpeds.org/position-statements/gender-dysphoria-in-children ...............17

(Page 4 of Total)

American Psychological Association, *Position Statement on Treatment of Transgender (Trans) and Gender Diverse Youth* (2020), https://www.psychiatry.org/File%20Library/About-APA/Organization-Documents-Policies/Policies/Position-Transgender-Gender-Diverse-Youth.pdf ..............................................................................................6

Society for Evidence Based Gender Medicine, *About Us,* https://segm.org/about_us .................................................................................17

iv

## INTRODUCTION

Appellants in this case are the American Academy of Pediatrics ("AAP"), American Medical Association, American Psychiatric Association, and 15 other non-profit, public interest organizations[1] that, as a matter of organizational policy and public advocacy, support "gender-affirming care," which encompasses medical treatments that are indicated for individuals diagnosed with the clinical condition known as gender dysphoria.[2]     Appellee Florida Agency for Health Care Administration (the "State") concluded that certain of those treatments are "experimental" and, on that basis, adopted a rule prohibiting Medicaid coverage for them.  In connection with a lawsuit several individuals filed in the Northern District of Florida asserting constitutional challenges to that rule,[3] the State served identical third-party subpoenas on Appellants seeking a variety of materials that would reveal

---

[1] The remaining Appellants are Endocrine Society, World Professional Association for Transgender Health ("WPATH"), American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American College of Obstetricians and Gynecologists, American College of Physicians, American Pediatric Society, Association of American Medical Colleges, National Association of Pediatric Nurse Practitioners, North Central Florida Council of Child & Adolescent Psychiatry, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, and Society of Pediatric Nurses.

[2] Gender dysphoria is a clinical condition that is marked by distress due to an incongruence between a patient's gender identity (i.e., the innate sense of oneself as being a particular gender) and sex assigned at birth.

[3] *Dekker v. Weida*, No. 4:22-cv-325-RH-MAF (N.D. Fla. filed Sept. 7, 2022) ("*Dekker*" or the "Underlying Litigation").

1

the substance of the internal deliberative process each used to develop their organizational policy supporting gender-affirming care (and, in the case of two organizations, clinical guidelines they publish for gender-affirming care).

After meet-and-confer efforts failed to resolve Appellants' objections to this discovery, including their First Amendment objections, Appellants sought on January 13, 2023 to quash the subpoenas in the District Court for the District of Columbia, where the subpoenas were noticed for compliance.  On January 26, 2023, the district court issued an order that, in Appellants' view, called for the production of documents that would not reveal their deliberative process and thus did *not* implicate their First Amendment rights.  *See* ECF No. 18 ("Original Order") (Ex. 1).[4]

After Appellants produced documents in response to that order, it became apparent that the State had a different interpretation of the Original Order, and on February 21, 2023, the State sought clarification from the district court.  On February 28, 2023, the district court overruled Appellants' objections to this discovery and ordered them to produce documents and testimony revealing their internal deliberations.  *See* ECF No. 26 ("Order") (Ex. 3).[5]  On March 3, 2023, the district

---

[4] A transcript of the district court's hearing relevant to the January 26, 2023 Order is attached as Exhibit 2.

[5] A transcript of the district court's hearing relevant to the February 28, 2023 Order is attached as Exhibit 4.

2

court rejected Appellants' request to stay the discovery pending the instant appeal of the district court's Order, *see* ECF No. 31 ("Stay Order"), and ordered Appellants to produce the disputed documents and deposition testimony by ***this Friday***, ***March 10, 2023***—the same day fact discovery closes in the Underlying Litigation. *See id.* That deadline mandates the emergency posture of this motion.[6]

The compelled information that is due in four days includes, *inter alia*, "the substantive materials and opinions that [each organization] considered and relied upon, as well as the materials and opinions that were considered and rejected in adopting [their] guidelines or policy positions." Ex. 3, Order at 1. That includes information about "what studies were considered in adopting the guidelines or policy positions and why a particular study was relied upon or rejected," as well as whether "any dissenting views were otherwise acknowledged, whether such views were considered in adopting guidelines or policy positions, and why such views were rejected." *Id.*

Production of this information evidencing each organization's internal deliberative process would squarely infringe Appellants' First Amendment rights. As this Court has recognized, "disclosure of an association's confidential internal

---

[6] Because the district court's Stay Order was issued on March 3, 2023, Appellants could not have filed this motion sooner and must seek this emergency stay less than seven days before the required action. *See* D.C. Cir. Rule 27(f).

materials . . . intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' as well as seriously interferes with internal group operations and effectiveness." *AFL-CIO v. FEC*, 333 F.3d 168, 177–78 (D.C. Cir. 2003) (citation omitted); *see also Rumsfeld v. Forum for Academic & Inst. Rights, Inc.*, 547 U.S. 47, 69 (2006) (disclosures that would make "group membership less attractive" raise First Amendment concerns). The district court acknowledged Appellants' First Amendment interests in the disputed information, but concluded those interests must yield to the State's purported "substantial need" for the information. *See* Stay Order at 2. However, the State does not need this information at all. As set forth below, while the State claims it is interested in probing the purported consensus of the "medical establishment" in favor of gender-affirming care, this discovery is not about a consensus among the "establishment." On its face, it is an attempt by the State to litigate and attack the internal deliberative process of *individual groups* that have developed and advocated for a public policy the State disdains. This discovery tramples on firmly-established Constitutional principles and, if permitted to go forward, would have immediate and irreparably harmful effects on each group and the public at large.

As things stand, in four days' time each Appellant will be faced with the intolerable choice of disclosing their internal deliberations to an outspoken public policy opponent—potentially mooting this appeal—or resisting the district court's

4

Orders[7] to preserve their First Amendment interests and exposing themselves to the ramifications of that choice.  But there is no exigency that demands this choice happen on this expedited timeframe.  This Court should stay the district court's Orders pending appeal so that the important constitutional questions raised by this appeal receive the careful and thoughtful consideration they deserve.  Appellants request that the Court take action by **Wednesday, March 8, 2023**, because the first deposition is scheduled for Thursday, March 9, 2023.

## BACKGROUND

*The Underlying Litigation.*  On August 21, 2022, the State adopted Florida Administrative Code Rule 59G-1.050(7), prohibiting Medicaid coverage for certain treatments for gender dysphoria.  Plaintiffs in the Underlying Litigation thereafter filed a complaint to enjoin the rule.

Appellants sought leave to file an amicus brief explaining how "gender-affirming care" is the appropriate treatment for gender dysphoria, as reflected in publicly-available clinical guidelines that are published by two of the 18 groups that bring this motion:  WPATH and Endocrine Society.  The remaining 16 groups do

---

[7] Appellants refer to the January 26, 2023 Order and February 28, 2023 Order in this motion collectively as the "Orders."

not publish clinical guidelines on gender-affirming care.[8]  ECF No. 2-2 (*Dekker* Mot. for Leave); ECF No. 2-3 (*Dekker* Proposed Amicus Brief).  The State opposed this submission, and the *Dekker* court denied Appellants leave to file the amicus brief. ECF No. 2-5 (*Dekker* Order Denying Leave to File Amicus Br.).

***The Subpoenas***.   The State subsequently issued identical third-party subpoenas for documents to every Appellant and for depositions to three of the groups (AAP, Endocrine Society, and WPATH).  The subpoenas sought information about, *inter alia*, the deliberative process each organization employed to adopt policies or guidelines regarding gender-affirming care.  *See generally* ECF Nos. 1-4 to 1-21.  Appellants asserted First Amendment and other objections to these requests.

Following unsuccessful meet-and-confer efforts, Appellants moved to quash the subpoenas in the district court on January 13, 2023.  ECF No. 1.  In resolving that motion, the district court initially ordered Appellants to produce the following categories of documents:

1. Documents sufficient to show its total number of members.

2. Documents sufficient to show how it establishes guidelines or, if it does not establish guidelines, policy positions.

---

[8] For example, the American Psychiatric Association has adopted a short "Position Statement on Treatment of Transgender (Trans) and Gender Diverse Youth," which is a "[p]olicy document[]" that "define[s] APA official policy" on a topic of interest to the profession.  *See* https://www.psychiatry.org/File%20Library/About-APA/Organization-Documents-Policies/Policies/Position-Transgender-Gender-Diverse-Youth.pdf.

3. Its guidelines or policy position (if any) on gender-affirming care for gender dysphoria.

4. Documents sufficient to show how it established guidelines or, if it has not established guidelines, its policy position (if any) on gender-affirming care for gender dysphoria.

5. Any official communications with its membership concerning its guidelines or, if it has not established guidelines, its policy position (if any) on gender-affirming care for gender dysphoria.

Ex. 1, Original Order at 1.

Appellants subsequently produced documents in response to the court's order that were sufficient to show the *process* those organizations used to establish their policy positions or guidelines regarding gender-affirming care, but not the detailed substance of those deliberations. The State deemed this production deficient and sought the district court's intervention. On February 28, 2023, the district court elaborated that:

> In producing documents sufficient to show "how" the [Appellants] established guidelines or policy positions on gender-affirming care for the treatment of gender dysphoria, the [Appellants] shall produce documents sufficient to show both (a) the process by which any such guidelines . . . were adopted, and (b) the substantive materials and opinions that were considered and relied upon, as well as the materials and opinions that were considered and rejected, in adopting the guidelines or policy positions. This includes, but is not limited to, documents that would be sufficient to show what studies were considered in adopting the guidelines or policy positions and why a particular study was relied upon or rejected. It also includes documents that would be sufficient to show whether any dissenting views were otherwise acknowledged, whether such views were considered in adopting guidelines or policy positions, and why such views were rejected.

7

Ex. 3, Order at 1. In this same order, the district court ordered WPATH, Endocrine Society, and AAP to submit to depositions covering the following topics by March 8, 2023:

  a. The organization's total number of members.

  b. How the organization establishes guidelines or policy positions.

  c. The organization's guidelines or policy position on gender-affirming care for gender dysphoria.

  d. How the organization established its guidelines or policy position on gender-affirming care for gender dysphoria (as clarified by this Order and the Court's oral instructions).

  e. Official communications with the organization's membership concerning its guidelines or policy position on gender-affirming care for gender dysphoria.

*Id.* at 2.

On March 2, 2023, Appellants filed an emergency motion for a stay, which the district court denied the next day. ECF No. 27; Stay Order at 5. Although the district court identified the four factors relevant to such a stay, it expressly discussed only one—Appellants' likelihood of success on the merits—and concluded Appellants had not satisfied that factor. Stay Order at 2. The district court also ordered Appellants to produce the contested documents and deposition testimony by March 10, 2023. *Id.* at 5.

8

Appellants now seek a stay in this Court on an emergency basis to avoid irreparable infringement of their First Amendment rights in just a few days' time. The State opposes this motion.

## ARGUMENT

A stay pending appeal is called for when the moving party shows: (1) it is likely to prevail on the merits of its challenge; (2) it will otherwise suffer irreparable harm; (3) a stay will not injure other parties; and (4) a stay is in the public interest. *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). While the Court considers each factor, the risk of irreparable harm and the likelihood of success on appeal are most critical. *Friends of Cap. Crescent Trail v. Fed. Transit Admin.*, 263 F. Supp. 3d 144, 147 (D.D.C. 2017). Here, all four factors favor issuance of a stay.

**I.    Appellants Are Likely to Succeed on the Merits of Their Appeal Because Their First Amendment Interests in Protecting Internal Deliberations Outweigh Any Need the State Might Have for the Requested Information.**

Courts have quashed subpoenas that would infringe on rights guaranteed by the First Amendment by, for example, discouraging members from joining or participating in organizations, chilling the robust and uninhibited exchange of ideas that organizations require to do their work, or otherwise damaging their effectiveness. In this case, disclosure of Appellants' internal deliberations would

9

work those harms, while the State's interest in disclosure is nonexistent or weak at best.  As such, the Appellants are likely to prevail on the merits of their appeal.

### A.    This Court Has Jurisdiction to Entertain Appellants' Appeal.

Appellants will discuss this Court's jurisdiction to hear their appeal in their opening brief, but for purposes of the instant motion briefly address those issues below.

*First*, this Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the district court's Orders constitute a final decision.  "A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  *St. Marks Place Housing Co. v. HUD*, 610 F.3d 75, 79 (D.C. Cir. 2010).  The sole issue before the district court was Appellants' Motion to Quash.  ECF No. 1.  The district court's Orders definitively resolved that motion on the merits and established a deadline for Appellants to comply.  *See* Ex. 3, Order at 2.  While the Orders are not styled as a judgment, in the context of this dispute it functions as one; there is "nothing for the court to do" but enforce the Orders.

*Second*, even if there is a question as to whether the Orders "end[ed] the litigation on the merits," they are appropriately deemed "final" within the meaning of 28 U.S.C. § 1291 and thus reviewable by this Court pursuant to the collateral order doctrine.  Under that doctrine, this Court has jurisdiction over "rulings that, although they do not end the litigation, are appropriately deemed 'final.'"  *Mohawk*

10

*Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009).  Reviewable collateral orders are those "that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action."  *Id.*

The district court's Orders meet this standard.  They are conclusive—"failure to comply with it may result in sanctions against [appellants] or [their] witness[es]." *Whole Woman's Health v. Smith*, 896 F.3d 362, 367 (5th Cir. 2018).[9]  The Orders resolve important and novel issues separate from the underlying merits of the litigation.  Finally, the Orders are "effectively unreviewable on appeal" because after Appellants' privileged information has been disclosed, it cannot be undone. Furthermore, the Appellants as non-parties do not have a vehicle to vindicate their First Amendment rights and appeal whatever final judgment ultimately issues in the

---

[9] *Whole Woman's Health* is on all fours with the instant appeal and motion.  There, the district court overruled First Amendment objections and compelled the discovery of a third-party religious organization's "internal communications . . . concerning its activities in the public square to advance and protect its position on serious moral or political issues."  896 F.3d at 370.  After the district court rejected the organization's motion for a stay, the organization filed an emergency motion with the Fifth Circuit seeking a stay.  Emergency Mot., *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018) (No. 18-50484) (Ex. 5).  The Fifth Circuit granted the stay and, in its later opinion resolving the appeal, concluded the district court's order was reviewable under the collateral order doctrine.  *Whole Woman's Health*, 896 F.3d at 368 (holding that "interlocutory court orders bearing on First Amendment rights remain subject to appeal pursuant to the collateral order doctrine").

11

Underlying Litigation.  *See id.* at 368 (recognizing "the predicament of third parties" in this context).

*Third*, even if the Orders are not "final" within the meaning of 28 U.S.C. § 1291, this Court has jurisdiction under § 1292(a) because the Orders are injunctive in nature.  When a "district court has ordered the release of information for which the [party] claims no basis for non-disclosure beyond the argument already rejected . . . , the court's order is injunctive in nature and appealable under 28 U.S.C. § 1292(a)(1)."  *Leopold v. Cent. Intel. Agency*, 987 F.3d 163, 169 (D.C. Cir. 2021) (cleaned up).  In other words, "[t]here is no doubt that orders requiring 'the disclosure of documents' are appealable injunctions."  *Id.*[10]

### B.    Appellants Are Likely to Succeed on the Merits of Their Appeal.

In this Circuit, courts addressing First Amendment challenges to discovery requests must perform a balancing test to determine if such discovery should be permitted:  "the plaintiff's First Amendment claim should be measured against the defendant's need for the information sought.  If the former outweighs the latter, then the claim of privilege should be upheld."  *See Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981), *vacated as moot sub nom. Smith v. Black Panther*

---

[10] If the Court finds that neither § 1291 nor § 1292 afford it jurisdiction, Appellants will petition the Court for a writ of mandamus preventing the district court from enforcing the Orders.

*Party*, 458 U.S. 1118 (1982); *see also Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 4 (D.D.C. 2002).

Here, Appellants' First Amendment interests are substantial. As the record demonstrates, enforcement of the subpoenas would impede Appellants' freedom of association and speech and thus their effectiveness, including by frustrating their ability to organize, entertain uninhibited and candid internal debates, make well-reasoned decisions, and generate work product that is useful to the public. For example, a representative of AAP described how the threatened disclosure of their internal deliberations has "chilled [their] internal communications" and led both employees and members to communicate less, or not at all, on certain issues; made it "extremely difficult to seek out" the expertise of their physician-members who fear disclosure of their communications; and led to concerns "new members will fear joining, if they know their private emails and comments shared with us will become public fodder in contentious policy debates." *See* AAP Decl. ¶¶ 15–21, ECF No. 6-2. Other organizations are in accord. *See, e.g.*, Endocrine Soc'y Decl. ¶¶ 13–16, ECF No. 6-3; WPATH Decl. ¶¶ 12–16, ECF No. 6-4.

Courts routinely protect First Amendment interests where, as here, compelled disclosures threaten to undermine an organization's effectiveness. For example, this Court concluded that the AFL-CIO and Democratic National Committee asserted "substantial First Amendment interests in the disclosure of their own internal

13

materials" by showing that "compelled disclosure of internal planning materials" would "frustrate those groups' decisions as to 'how to organize . . . [themselves], conduct . . .[their] affairs, and select . . . [their] leaders.'" *AFL-CIO*, 333 F.3d at 177–78. This Court explained that "disclosure of an association's confidential internal materials . . . intrudes on the 'privacy of association and belief guaranteed by the First Amendment,' *as well as seriously interferes with internal group operations and effectiveness*." *Id*. (emphasis added) (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)). As the Fifth Circuit concluded in *Whole Woman's Health*, communications within associations "must be permitted to be broad, uninhibited, and fearless, and [] protecting such deliberations is a seminal aspect of the freedom to associate." 896 F.3d at 372; *see also Perry v. Schwarzenegger*, 591 F.3d 1147, 1162–63 (9th Cir. 2010) (observing that "the right to exchange ideas and formulate strategy and messages, and to do so in private" is "[i]mplicit in the right to associate with others to advance one's shared political beliefs," and that compelling disclosure of internal deliberations "can chill the exercise of these rights").

The district court acknowledged that there are "First Amendment issues at stake here" and that Appellants "have a First Amendment interest in their internal communications," but concluded that any infringement could be "substantially mitigate[d]" by Appellants' redaction of member names and production of information pursuant to a protective order. Stay Order at 5. However, while it is

14

certainly true that disclosing an individual member's identity is *a* concern here, it is not the only or even primary one. Rather, the fundamental concern is that the disclosure of the substance of each organization's internal deliberative process—including to one of their principal *public policy opponents*—will profoundly chill participation in each organization, impede members' willingness to voice unpopular or critical views that could be disclosed and used against the organization by its opponents, and damage each organization's ability to organize and operate effectively. *See, e.g.*, *Apple Inc. v. Match Grp., Inc.*, 2021 WL 3727067, at *8 (N.D. Cal. Aug. 19, 2021) (refusing to enforce request for advocacy group's internal documents on First Amendment grounds and observing "[w]ho in their right mind would want to participate in a public advocacy organization, knowing that all their internal communications about strategy, lobbying, planning, and so on, would be turned over to their principal opponent?"). Redacting member names cannot and will not mitigate these harms. *See Perry*, 591 F.3d at 1163–64 (protective orders "cannot eliminate" the First Amendment injury resulting from compelled disclosure).

On the other side of the scale, the State's purported "need for the information sought" is nonexistent or weak at best. Courts consider the interest in disclosure in this context to be "relatively weak unless the information goes to 'the heart of the matter,' that is, unless it is crucial to the party's case." *Black Panther Party*, 661

15

F.2d at 1268; *see also Perry*, 591 F.3d at 1161 (describing that "the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)."). In addition, courts "must determine whether the litigants seeking disclosure have pursued alternative sources." *Black Panther Party*, 661 F.2d at 1268. "Even when the information sought is crucial to a litigant's case, disclosure should be compelled only after the litigant has shown that he has exhausted every reasonable alternative source of information." *Id*.

Here, there is no dispute about the "heart of the matter" in the Underlying Litigation: "whether, based on current medical knowledge, the state's determination that [certain] treatments [for gender dysphoria] are experimental is reasonable." Stay Order at 2–3. The State has argued that the alleged consensus of the medical community in support of gender-affirming care is relevant to that inquiry, and the district court agreed. *See id.* at 4 (reasoning "[Appellants] and the plaintiffs all claim that the [Appellants] represent the medical community, so their views provide a powerful retort to the reasonableness of the State's position"). Based on that premise, the district court agreed that discovery of each Appellant's internal deliberative process was relevant—indeed, sufficiently relevant to outweigh Appellants' First Amendment interests. *See id.* There is a flaw in that reasoning,

16

however, because the State is not seeking evidence of consensus *among* the purported medical establishment—the very issue that it claims goes to the "heart of the matter." Rather, it is seeking evidence of alleged dissent *within* individual organizations.

In addition, even accepting the State's theory of relevancy on its own terms, it has not shown that it "exhausted every reasonable alternative source of information." *Black Panther Party*, 661 F.2d at 1268. To undermine the proposition that the "medical community" supports gender-affirming care, the State could identify and speak with members of that community with contrary views, such as the American College of Pediatricians, a "national organization of pediatricians and other healthcare professionals" that believes gender-affirming care is "founded upon an unscientific gender ideology, lacks an evidence base, and violates the long-standing ethical principle of 'First do no harm.'"[11] The State could also speak with the Society for Evidence Based Gender Medicine, an "international group of over 100 clinicians and researchers concerned about the lack of quality evidence" supporting gender affirming care.[12] Similarly, the State could speak with individuals who have publicly dissented from the policies adopted by Appellants. *See, e.g.*, Stay

---

[11] *See* https://acpeds.org/position-statements/gender-dysphoria-in-children (last visited Mar. 6, 2023).

[12] *See* https://segm.org/about_us (last visited Mar. 6, 2023).

17

Order at 4 n.1.  Such discovery would be relevant to the "heart of the matter" as framed by the State and district court, and none of it would require an infringement of Appellants' First Amendment rights.

Because Appellants have shown that their First Amendment interests in the requested material substantially outweigh the State's purported need for that information, Appellants have demonstrated a likelihood of success on the merits of their appeal.

## II. Appellants Will Be Irreparably Injured Absent a Stay Because the Imminent Harm to Their First Amendment Rights Cannot Be Remedied.

A party moving for a stay must show injury "both certain and great" that is "actual and not theoretical." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  However, "the loss of constitutional freedoms, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) (holding that infringement of First Amendment rights constitutes irreparable injury)); *see also Singh v. Berger*, 56 F.4th 88, 109 (D.C. Cir. 2022) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").  The district court did not expressly consider this factor in its order denying a stay, even though it is critical.

In this case, and as discussed above, Appellants have submitted unrefuted evidence that the compelled disclosure of their internal deliberations in compliance with the district court Orders is having and will continue to have a chilling effect on their free speech and associational rights under the First Amendment. *See supra* Section I.B. The irreparable injury factor is thus plainly satisfied in this case. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 303 (D.C. Cir. 2006) ("Within the irreparable harm analysis itself . . . we examine only whether [the alleged infringement of First Amendment rights], if true, inflicts irremediable injury.").

Even apart from the special First Amendment concerns the Supreme Court recognized in *Elrod v. Burns*, this case is different from many others in which a party seeks to stay discovery of contested material pending an appeal. In other cases, a party might have a post-trial remedy if a trial court improperly admits evidence—for example, the appellate court might order a new trial that excludes the contested material. By contrast, Appellants are not parties in the Underlying Litigation. Appellants' only interest in this case is in preventing the harm to their First Amendment rights that they will suffer if they are required to produce their internal deliberations. Absent a stay, no remedy could undo those harms—Appellants' injuries would be quintessentially irreparable.

19

III.    **The Public Interest in Protecting First Amendment Values and Encouraging Robust Scientific Debate Favors a Stay.**

The public interest favors granting a stay to protect Appellants' First Amendment rights.  "It is always in the public interest to prevent the violation of a party's constitutional rights."  *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) (citation omitted); *see also Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983) (noting the "strong public interest in protecting First Amendment values").

The public interest also strongly favors granting a stay in this case because the prospect of compelled disclosure is already chilling Appellants' educational and scientific efforts, which ultimately benefit the public at large.  For example, AAP works to benefit pediatricians and their patients by publishing practice recommendations, "which pediatricians use every day to inform their medical decision-making."  *See* AAP Decl. ¶ 21, ECF No. 6-2,  "Open, honest dialogue is . . . essential to the accuracy" of those recommendations.  *Id.*  AAP relies on experts who volunteer their time to discuss and draft those recommendations, but "many would think twice before volunteering their expertise if their confidential feedback could be shared with the world."  *Id.*  That would "reduce the quality and accuracy of [AAP's] work product, which in turn will worsen the care that [its] pediatrician members provide to their patients across all health domains."  *Id.*

20

In similar contexts, courts have recognized the public interest in protecting third-party experts from discovery. "Compelling testimony from a third party researcher risks chilling participation in beneficial public research." *In re Fosamax Prods. Liab. Litig.*, 2009 WL 2395899, at *4 (S.D.N.Y. Aug. 4, 2009). Permitting such discovery "'inevitably tend[s] to check the ardor and fearlessness of scholars, qualities at once so fragile and so indispensable for fruitful academic labor.'" *Id.* (quoting *Sweezy v. New Hampshire*, 354 U.S. 234, 262 (1957) (Frankfurter, J., concurring)); *see also Plough Inc. v. Nat'l Acad. of Scis.*, 530 A.2d 1152, 1156–57 (D.C. 1987) (crediting organization's claim that its "ability to convince volunteers to serve on its committees would be impaired [if the court allowed discovery], since individuals would be reluctant to serve if they knew their comments were subject to disclosure").

In short, the public interest in protecting Appellants' First Amendment rights and the interest in promoting rather than chilling educational and scientific efforts that ultimately benefit the public weigh strongly in favor of a stay.

## IV. Any Claimed Harm to the State From a Stay Is Speculative at Best.

When the party opposing a stay claims that issuance of a stay will cause them substantial injury, a court tests the claimed harms for substantiality, likelihood of occurrence, and adequacy of proof. *See Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

21

In this case, any harm to the State from issuance of a stay will be insubstantial because the State will obtain the information it is seeking if it prevails on appeal. The State may claim that a stay could effectively moot the issue by preventing it from obtaining the information it seeks before the discovery deadline in the Underlying Litigation, but the existence of such harm is wholly speculative. Indeed, it is equally plausible that, if a stay is granted, the district court overseeing the Underlying Litigation would extend the discovery deadline or find other ways to accommodate the State's asserted interest in this discovery. That court is best positioned to evaluate whether the discovery at issue is sufficiently relevant to the Underlying Litigation to justify a scheduling adjustment to accommodate a stay pending appeal in this proceeding.

22

**CONCLUSION**

For the reasons set forth above, Appellants respectfully request that the Court stay the Orders pending appeal.

Dated:  March 6, 2023

Respectfully submitted,

*s/ D. Jean Veta*

| | |
|---|---|
| Cortlin H. Lannin | D. Jean Veta |
| COVINGTON & BURLING LLP | Mishi Jain |
| Salesforce Tower | Emile Katz |
| 415 Mission St., Suite 5400 | COVINGTON & BURLING LLP |
| San Francisco, CA 94105 | One CityCenter |
| (415) 591-6000 | 850 Tenth St., N.W. |
| clannin@cov.com | Washington, D.C. 20001 |
| | (202) 662-6000 |
| Michael J. Lanosa | jveta@cov.com |
| COVINGTON & BURLING LLP | mjain@cov.com |
| 1999 Avenue of the Stars | ekatz@cov.com |
| Los Angeles, CA 90067 | |
| (424) 332-4800 | *Counsel for Appellants* |
| mlanosa@cov.com | |

23

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limits of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2(B), this document contains 5,067 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using 14-point Times New Roman font in Microsoft Word 2016.

Dated:  March 6, 2023

*s/ D. Jean Veta*
D. Jean Veta

24

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of March, 2023, the foregoing motion and attachments were filed with the Clerk of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

*s/ D. Jean Veta*
D. Jean Veta

**ADDENDUM**

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 8(a)(4) and 28(a)(1)(A), Petitioners-Appellants certify as follows:

### A. Parties and Amici

Appellants in this case and Petitioners in the district court are American Academy of Pediatrics, American Medical Association, American Psychiatric Association, Endocrine Society, World Professional Association for Transgender Health, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American College of Obstetricians and Gynecologists, American College of Physicians, American Pediatric Society, Association of American Medical Colleges, National Association of Pediatric Nurse Practitioners, North Central Florida Council of Child & Adolescent Psychiatry, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, and Society of Pediatric Nurses.

Appellees in this case and Respondents in the district court are Secretary Jason Weida and the Florida Agency for Health Care Administration.

Amici in the district court include August Dekker, Brit Rothstein, Susan Doe, and K.F. in support of Appellants.

A-1

**B. Rulings Under Review**

The rulings under review in this appeal are the Order entered on January 26, 2023 (ECF No. 18) and the Order entered on February 28, 2023 (ECF No. 26), denying in part Petitioners' motion to quash. Appellants also seek review of any and all underlying orders, rulings, findings, and/or conclusions adverse to them.

**C. Related Cases**

This case was not previously before this Court or any other court.

In *Dekker v. Weida*, No. 4:22-cv-325-RH-MAF (N.D. Fla. filed Sept. 7, 2022), Appellants in this case sought to file an amicus brief in support of the Plaintiffs. After the Defendants there (Respondents-Appellees here) opposed the submission and the *Dekker* district court denied Appellants' request to file an amicus brief, Defendants served third-party subpoenas on Appellants. Appellants then brought filed a motion in the District Court for the District of Columbia seeking to quash the Appellees' subpoenas.

Dated:  March 6, 2023

*s/ D. Jean Veta*
D. Jean Veta

A-2

**RULE 26.1. DISCLOSURE STATEMENT**

I, the undersigned, certify that, to the best of my knowledge and belief, no corporations hold any stock in American Academy of Pediatrics, American Medical Association, American Psychiatric Association, Endocrine Society, World Professional Association for Transgender Health, American Academy of Child & Adolescent Psychiatry, American Academy of Family Physicians, American Academy of Nursing, American College of Obstetricians and Gynecologists, American College of Physicians, American Pediatric Society, Association of American Medical Colleges, National Association of Pediatric Nurse Practitioners, North Central Florida Council of Child & Adolescent Psychiatry, Societies for Pediatric Urology, Society for Adolescent Health and Medicine, Society for Pediatric Research, or Society of Pediatric Nurses.

Dated:  March 6, 2023

*s/ D. Jean Veta*
D. Jean Veta

A-3