No. 23-7025
_____

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

IN RE SUBPOENAS SERVED ON AMERICAN ACADEMY OF PEDIATRICS, et al.,
_____

On Appeal from the United States District Court
for the District of Columbia, No. 1:23-mc-00004-CJN
Before the Honorable Carl J. Nichols
_____

# APPELLANTS' REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR A STAY PENDING APPEAL
_____

Cortlin H. Lannin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
Phone: (415) 591-6000
clannin@cov.com

Michael J. Lanosa
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
Phone: (424) 332-4800
mlanosa@cov.com

D. Jean Veta
Mishi Jain
Emile Katz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone: (202) 662-6000
jveta@cov.com
mjain@cov.com
ekatz@cov.com

*Counsel for Appellants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .................................................................................................... 1

ARGUMENT ............................................................................................................ 3

I.    Appellants Are Likely to Succeed on the Merits of Their Appeal. ................. 3

II.   The State Fails to Address Appellants' Irreparable Injury. ............................. 7

III.  The Public Interest Favors a Stay. ................................................................... 7

IV.  The State's Claimed Harm from a Stay Is Speculative. .................................. 8

CONCLUSION ......................................................................................................... 9

CERTIFICATE OF COMPLIANCE ...................................................................... 10

CERTIFICATE OF SERVICE ............................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cate v. Oldham*,
 707 F.2d 1176 (11th Cir. 1983) ...................................................................9

*In re Fosamax Prod. Liab. Litig.*,
 2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009).........................................10

*In re Sealed Case*,
 381 F.3d 1205 (D.C. Cir. 2004)...................................................................5

*Singh v. Berger*,
 56 F.4th 88 (D.C. Cir. 2022)........................................................................9

*Whole Woman's Health v. Smith*,
 896 F.3d 362 (5th Cir. 2018) .......................................................................5

**Statutes & Rules**

28 U.S.C. § 1291 .................................................................................................5

**Other Authorities**

Sam Ogozalek, *Florida Ban on Gender-Affirming Care For Minors to Start Next Week*, Tampa Bay Times (Mar. 6, 2023)..............................4

# INTRODUCTION

Starting tomorrow morning, each of 18 organizations that have spoken out in favor of a public policy the State vigorously opposes will be required, pursuant to court order and under threat of sanction, to submit to the State's searching audit of the internal deliberative process each used to develop their organization's public positions on the appropriate medical treatments for transgender individuals, including transgender adolescents; and on the public policies that, based on the science, should (or should not) govern such treatments. The compelled discovery includes, among other things, a review of the "substantive materials" that each organization reviewed and considered in developing its policy; as well as any "opinions" that were expressed by members, whether in favor or opposition to the proposed policy. Ex. 3, Order at 1.[1] As to "dissenting views" in particular, each organization must disclose "whether such views were considered … and why such views were rejected." *Id.*

Even the State concedes this discovery infringes Appellants' First Amendment rights. The district court agreed. *See* Ex. 2 at 44 (acknowledging "significant First Amendment interests at stake in this case" and that Appellants' "members may be discouraged from joining or participating in the organization if

---

[1] Citations to "Ex." refer to exhibits attached to Appellants' opening motion for a stay pending appeal.

they fear that their communications or highly internal communications will be disclosed."). The State nonetheless insists its purported need for this discovery—to probe the "consensus" of the "medical community"—trumps these interests, but this argument does not withstand scrutiny. In fact, it appears the State prefers to litigate not the scientific reasonableness of the rule it adopted, but rather the internal deliberative process of the groups that spoke out against it, and that could do so again as the State advances new rules and laws banning gender-affirming care.[2] This effort to expose the private deliberations of voluntary associations infringes core freedoms protected by the First Amendment and would cause irreparable harm, and this Court should stay the imminent discovery pending its full review of the district court's Orders.[3]

---

[2] *See, e.g.*, Sam Ogozalek, *Florida Ban on Gender-Affirming Care For Minors to Start Next Week*, Tampa Bay Times (Mar. 6, 2023), https://www.tampabay.com/ news/ health/2023/03/06/florida-transgender-ban-desantis-health/.

[3] Appellants respectfully request that the Court take action by **today, March 8, 2023**, because the first deposition is scheduled to begin at 9 a.m. ET on Thursday, March 9, 2023.

# ARGUMENT

The parties agree on the four factors this Court considers in determining whether to grant a stay pending appeal. *See* Mot. at 9; Opp. at 10.[4] The State's arguments as to all four, however, are unavailing.

## I. Appellants Are Likely to Succeed on the Merits of Their Appeal.

Appellants' motion described how their First Amendment interests outweighed whatever need, if any, the State had for this discovery. In response, the State cursorily dismisses Appellants' First Amendment concerns as "overstated." Opp. at 12. Those concerns, however, are substantial, and none of the State's responses to them has merit. Importantly, the State does not cite a *single* case in which a court compelled disclosure on facts similar to those presented here; nor does the State grapple with any of the authority cited by Appellants in which such disclosures were rejected, including *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018). *See, e.g.*, Mot. at 11 n.9.

---

[4] The State does not substantively contest this Court's jurisdiction at this stage. As the State concedes, Opp. at 11, this Court has held that it has jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine to review "orders compelling production of allegedly privileged information." *In re Sealed Case*, 381 F.3d 1205, 1209 (D.C. Cir. 2004). *In re Sealed Case* applies here because all three criteria for collateral review are satisfied. *See* Mot. at 11.

3

The State again suggests that Appellants' ability to redact member names minimizes any infringement of Appellants' First Amendment interests. *See* Opp. at 13.[5] However, and as Appellants explained in their motion (*see* Mot. at 15), such redactions will not remedy the fundamental issue here: that members' awareness that their internal comments and opinions will be disclosed outside the organization, including to one of the organization's primary public opponents, will chill their willingness to participate in the organization, express candid and even critical views that could be mischaracterized by external entities, and ultimately impair the type of healthy and candid *internal* debate that allows each organization to contribute value to a robust *external* debate. *See* Mot. at 15. In other words, this is not just about disclosure of member names; it is about disclosure of members' *views*—and redactions cannot solve that problem.

The State's various criticisms of the evidence Appellants submitted to substantiate their First Amendment concerns are also without merit. *See* Opp. at 13-14. First, the declarations are not "outdated," as the First Amendment concerns

---

[5] The State also repeatedly claims that the district court's purported "narrowing" of the original discovery requests has mitigated Appellants' First Amendment concerns. *See, e.g.*, Opp. at 13. Even assuming the district court "narrowed" the original discovery, the discovery that remains and that has been ordered by the district court squarely infringes Appellants' First Amendment rights and is the subject of this appeal.

4

expressed therein are as equally applicable to the purportedly "narrowed" discovery drafted by the district court as they are to the original discovery served by the State.

Second, the declarations do not reflect the "speculation" of a random member, *see* Opp. at 14, but rather the well-informed opinions of high-ranking individuals at each organization as to how service and potential enforcement of the subpoenas have and will harm each group.

Third, the State's complaint that only three organizations submitted a declaration to the district court is ironic at best given that the State served 18 identical subpoenas on each organization, with no effort to tailor each subpoena to each organization. Appellants should not be faulted for failing to create 18 particularized declarations when the State made no effort to create 18 particularized subpoenas.

Finally, the State claims Appellants' "recent actions" undercut any assertions that this discovery has chilled their activity. The State's sole support for this broad proposition is a single webpage from the Endocrine Society, which the State claims reflects its "intensifying [] advocacy actions." Opp. at 14. The State proves too much, however, because that webpage says *nothing at all* about Endocrine Society's advocacy for gender-affirming care—which is actually consistent with its declarant's assertion that the subpoena has chilled the organization's ability to "share our views" on this critical issue. ECF 1-2, ¶ 16.

5

Weighed against Appellants' substantial First Amendment interests, the State's argument for why it needs this discovery falls short. The State stresses that the views of the medical community have been put at issue by plaintiffs in the Underlying Litigation. Even if so, Appellants' views are now *known* to the State; each Appellant has now produced to the State any policy positions or guidelines they have on gender-affirming care; the State's professed interest in assessing the views of the medical community does not require invasive discovery of each individual organization's deliberative process. Furthermore, it cannot be that any time an expert or party relies on an organization's policy statement, that organization's internal deliberative process is subject to disclosure and trial; such a rule would chill any rational organization's interest in ever issuing a public policy again.

Finally, the State claims to have spoken with members of the medical community that oppose gender-affirming care, but asserts without explanation that these "alternative sources" of information are not sufficient. Opp. at 18. That the State has now developed such testimony and information means that it is prepared to challenge plaintiffs' assertion that the medical "consensus" favors gender-affirming care. Left unexplained is why the State thus requires additional discovery of the internal deliberative process individual groups used to reach a position on this question when the policy position of each group is publicly known.

6

## II. The State Fails to Address Appellants' Irreparable Injury.

The State has no substantive response to Appellants' showing that the undisputed infringement of their First Amendment rights would cause irreparable harm. *See* Mot. at 18-20. Rather, it relies on flawed arguments addressed elsewhere. For example, the State asserts that redacting member names would mitigate these harms—they would not (*see supra* Part I); and that Appellants' declarations are deficient—they are not (*see supra* Part I). In the end, Appellants' First Amendment harms are not "theoretical." *See* Opp. at 18. They are well substantiated, plausible on their face, and irreparable as a matter of law. *See Singh v. Berger*, 56 F.4th 88, 109 (D.C. Cir. 2022) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (internal quotations and citation omitted).

## III. The Public Interest Favors a Stay.

In their motion, Appellants explained how the public interest favors a stay. *See* Mot. at 20-21. The State claims to the contrary that its interest in "ensuring that its Medicaid program reimburses only non-experimental services" militates against a stay. Opp. at 20. But even if the Court were to credit such an interest, it would not sufficiently outweigh the "strong public interest in protecting First Amendment values" at stake here. *Cate v. Oldham*, 707 F.2d 1176, 1190 (11th Cir. 1983).

7

In addition, Appellants articulated how disclosure of their internal deliberative process would chill their beneficial scientific research and educational efforts, which is contrary to the public interest. *See* Mot. at 20-21. In response, the State levels the remarkably broad assertion that "[a]ny dialogue behind closed doors necessarily excludes voices from the debate" and that "[s]uch exclusions foster mistrust and sow the seeds of misinformation." *See* Opp. at 20-21. But if freedom of association means anything, it means the freedom to associate with whom one chooses in the manner one chooses—and not others. To the extent the State is suggesting that these organizations must engage in scientific debate and research exclusively in public and entertain all comers, such a rule not only flouts common sense but would cripple these organizations' efforts and reduce the First Amendment to a nullity. *See, e.g.*, *In re Fosamax Prod. Liab. Litig.*, 2009 WL 2395899, at *5 (S.D.N.Y. Aug. 4, 2009) (holding that disclosure of information on "internal committee matters would chill the crucial atmosphere of candor" because the organization "relie[d] heavily on the candor of its committee members to ensure the free exchange of ideas paramount to producing the best reports" and "participants [were] assured that their research and reviews [were] confidential.").

### IV. The State's Claimed Harm from a Stay Is Speculative.

The State's claim that it will be "substantially injured" by a stay rests on the proposition that the *Dekker* court will be unable to accommodate such a

8

development. As Appellants described, *see* Mot. at 22, that is pure speculation at best. In all events, Appellants respectfully submit that the serious constitutional issues presented by this appeal and the need to prevent the imminent infringement of their First Amendment rights should take precedence over the State's interest in compliance with a scheduling order that could be readily adjusted.

## CONCLUSION

For the reasons set forth above, Appellants respectfully request that this Court immediately stay the Orders pending appeal, and issue any other relief the Court deems just and proper.

Dated: March 8, 2023

Respectfully submitted,

*s/ D. Jean Veta*

Cortlin H. Lannin
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission St., Suite 5400
San Francisco, CA 94105
(415) 591-6000
clannin@cov.com

Michael J. Lanosa
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, CA 90067
(424) 332-4800
mlanosa@cov.com

D. Jean Veta
Mishi Jain
Emile Katz
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
(202) 662-6000
jveta@cov.com
mjain@cov.com
ekatz@cov.com

*Counsel for Appellants*

9

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of Fed. R. App. P. 27(d)(2)(C) because, excluding the parts of the document exempted by Fed. R. App. P. 27(a)(2(B), this document contains 1,881 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared using 14-point Times New Roman font in Microsoft Word 2016.

Dated: March 8, 2023

*s/ D. Jean Veta*
D. Jean Veta

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2023, the foregoing motion and attachments were filed with the Clerk of the Court, using the CM/ECF system, causing it to be served on all counsel of record.

*s/ D. Jean Veta*